UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FREDERICK TYRONE EDWARDS,

              Plaintiff,        6:18-cv-06221-MAT

     -v-                   **DECISION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

## INTRODUCTION

Frederick Tyrone Edwards ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On August 11, 2014, Plaintiff protectively filed applications for DIB and SSI, alleging disability as of December 31, 2006, due to back problems, depression, and high blood pressure. Administrative Transcript ("T.") 50. The claims were initially

denied on October 28, 2014. T. 98-104. At Plaintiff's request, a video hearing was conducted on July 11, 2016, in Falls Church, Virginia, by administrative law judge ("ALJ") Hortensia Haaversen, with Plaintiff appearing *pro se* via video conference in Rochester, New York. A vocational expert ("VE") also testified. T. 28-49. The ALJ issued an unfavorable decision on February 7, 2017. T. 9-27. Plaintiff appealed the decision to the Appeals Council, which denied Plaintiff's request for review on January 18, 2018, making the ALJ's decision the final determination of the Commissioner. T. 1-4. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 2009. T. 15.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. T. 15.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: affective disorder and poly-substance abuse. *Id.* The ALJ also considered Plaintiff's hypertension and complaints of back pain. The ALJ determined that Plaintiff's hypertension remained in control throughout the relevant period and that there was no evidence suggesting it caused

2

more than minimal limitations on Plaintiff's ability to perform work-related activities. Accordingly, the ALJ found Plaintiff's medically determinable impairment of hypertension was non-severe. *Id*. The ALJ further determined that the record contained no evidence of treatment for or assessment of any back impairment. Accordingly, the ALJ found that Plaintiff's alleged back impairment did not rise to the level of a medically determinable impairment. *Id*.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 20. The ALJ specifically considered the listings under Section 12.00 (Mental Disorders). T. 15-16.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: he is able to remember locations and work-like procedures; understand, remember, and carry-out very short and simple instructions; maintain attention and concentration for extended periods within a schedule; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms;

and perform at a consistent pace without an unreasonable number and length of rest periods. T. 17.

At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a roofer. T. 21. At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are light, unskilled jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of bagger, garment sorter, and marker. T. 22. The ALJ accordingly found that Plaintiff was not disabled as defined by the Act. *Id*.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must

scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff contends that remand is warranted for the following reasons: (1) the ALJ failed to meet her duty to develop the record; (2) the ALJ's RFC assessment is unsupported by substantial evidence and is inconsistent with the applicable legal standards; and (3) the ALJ failed to properly evaluate Plaintiff's credibility.

## I.   The ALJ's Duty to Develop the Record

Plaintiff first argues that the ALJ failed to meet her duty to develop the record, which was heightened given Plaintiff's *pro se* status at the hearing. For the reasons set forth below, the Court finds this argument lacks merit.

### A.   The Development of the Record

In his initial disability report, Plaintiff named Rochester General Hospital ("RGH") as the provider managing his prescriptions for his high blood pressure and mental health conditions. T. 185. He specifically named a "Dr. Karent" as his treating primary care doctor at RGH. T. 186. Plaintiff also named Rochester Mental Health

Center ("RMHC") as a treatment provider for his depression from 2009 through 2013. T. 187.

On September 23, 2014, the Social Security Administration ("SSA") sent record requests to RMHC and RGH. *See* T. 257, 267. RMHC supplied progress notes dated March 15, 2006, to March 6, 2008. T. 258-66. RGH supplied outpatient records dated March 19, 2011, to September 2, 2014. T. 268-89. The SSA also ordered a consultative psychological examination, which was performed on October 16, 2014 by Dr. Yu-Ying Lin; and an internal medicine consultative examination, which was performed the same day by Dr. Harbinder Toor. *See* T. 291-99.

As part of his appeal of the initial denial, Plaintiff completed an SSA form regarding his recent medical treatment and medications, which was received by the SSA on November 12, 2015. T. 221-22. On the form, Plaintiff stated "I have had several different doctors since I have been injured. I don't know how I can get the records. No one is helping me." T. 221. In the Hearing Notice sent by the ALJ dated May 3, 2016, Plaintiff was advised he was entitled to have a representative help him prepare his case. T. 126. The notice also advised Plaintiff of the ALJ's ability to issue subpoenas to require a person to submit documents or testify at the hearing, and instructions on how to request that the ALJ do so. T. 127-28. On May 6, 2016, Plaintiff acknowledged receipt of the Hearing Notice, but made no additional requests for assistance. T. 143-44.

At the hearing, Plaintiff appeared *pro se*. He acknowledged that the SSA had referred him to lawyers, and that he attempted to contact a lawyer, but did not get a return call. T. 30. The ALJ offered to postpone the hearing to allow him more time to retain counsel, but Plaintiff declined, stating he "wanted to do it [his] way." T. 31. The ALJ provided a document explaining a claimant's right to counsel; Plaintiff signed it and testified that he understood and that he still wished to waive his right to counsel.

Plaintiff testified he received his outpatient medical treatment from RGH on Portland Avenue. T. 39. Plaintiff was unable to remember the names of his doctors, but testified he had an upcoming appointment for blood pressure management on Wednesday of that week. T. 40. Plaintiff also testified he received mental health treatment from RMHC. T. 40-42. At the close of the hearing, the ALJ informed Plaintiff that she would contact these medical providers and attempt to obtain further medical documentation from them. T. 48-49. The ALJ instructed Plaintiff to contact the SSA if he remembered any other providers that he had not mentioned. *Id*.

Following the hearing, the SSA made requests to RMHC and Rochester Regional Health (a network of hospitals that RGH is affiliated with) for "[a]ll medical records on Frederick Tyrone Edwards" for dates ranging from 1/1/2006 through current for RMHC,

and 1/1/2000 through current for Rochester Regional Health.[1]
T. 233, 249.

On August 4, 2016, the SSA received medical records from RMHC
dated from March 15, 2006, to March 6, 2008. T. 305-30. On
August 5, 2016, the ALJ forwarded the medical records received from
RMHC to Plaintiff for his review. T. 253-54. In the cover letter,
the ALJ advised Plaintiff that he had the right to submit written
comments concerning the evidence, a written statement of facts and
law applicable to the evidence, and any additional records he
wished for the ALJ to consider. The ALJ also informed Plaintiff
that he was entitled to request a supplemental hearing, which the
ALJ would grant unless evidence was received that supported a fully
favorable decision. T. 253. Furthermore, the ALJ offered to issue
subpoenas for witnesses or documents, as long as Plaintiff supplied
the address or location of the witnesses or documents, and the ALJ
deemed the subpoena was reasonably necessary for the full
presentation of the case. T. 254.

On August 22, 2016, the SSA received more than 300 additional
pages of Plaintiff's medical records from RGH, spanning from
March 9, 2006, to August 15, 2016. T. 338-643. While these records
contained references to treatment Plaintiff received for mental

---

[1]The Court notes that the medical evidence of record refers
to Plaintiff as both Frederick Tyrone Edward and Frederick Tyrone
Edwards. Requests for records were sent including Plaintiff's
Social Security number, so the Court will assume Plaintiff was
properly identified by the medical facilities that supplied
records. *See, e.g.,* T. 233-34.

health, hypertension, and other incidental complaints, there were no treatment records for back pain or back-related impairments. *See* T. 268-89, 338-643. Moreover, the treatment notes from RGH that included references to Plaintiff's musculoskeletal system consistently showed a normal range of motion and no tenderness to palpation. *See, e.g.,* T. 268, 273-74, 275, 277-78, 283-84.

On August 23, 2016, the ALJ forwarded the additional medical evidence received from RGH to Plaintiff, with reminders of all the options Plaintiff had available to him for obtaining additional evidence and the assistance the ALJ was willing to provide, as was discussed in her August 5, 2016 letter. T. 255-56. The record contains no requests from Plaintiff for additional assistance prior to the ALJ issuing her decision on February 7, 2017.

Plaintiff retained counsel after receiving the adverse decision and is currently representing Plaintiff in this action. On March 2, 2017, Plaintiff's attorney made a request to the Appeals Council for additional time to submit a legal argument or additional evidence. T. 149. The Appeals Council granted Plaintiff's request on March 22, 2017. T. 6. No additional evidence was submitted by Plaintiff prior to the Appeals Council rendering its final decision. T. 1-4.

**B.   The ALJ Met Her Duty to Develop the Record on Behalf of the *Pro Se* Plaintiff**

Generally, the claimant has the burden of producing evidence to establish disability; however, because a hearing on disability

benefits is a non-adversarial proceeding, the ALJ has an affirmative duty to develop the administrative record. *Perez v. Charter*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). This duty is heightened when, as here, the claimant is not represented by counsel at the administrative hearing. *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) ("The ALJ must 'adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered' and by 'scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts.'") (internal quotation marks omitted). However, "[t]he ALJ's duty to develop the record is not infinite, and where, as here, evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary." *Tatelman v. Colvin*, 296 F. Supp.3d 608, 612 (W.D.N.Y. 2017) (internal quotation marks and citations omitted); *see also Perez*, 77 F.3d at 48 (where the evidence in the record is "adequate for [the ALJ] to make a determination as to disability," he or she is not required to further develop the record).

Furthermore, it is axiomatic that there will be no medical record showing a disabling condition if that condition does not in fact exist, nor is an ALJ nonetheless obliged to seek such nonexistent evidence. *See Schaal v. Apfel*, 134 F.3 496, 505 (2d Cir. 1998) (finding ALJ adequately developed the record where

there was little indication in the record suggesting claimant had a disabling mental disorder during the relevant period). In determining a disability claim, "[t]he [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983).

Plaintiff contends the ALJ failed to follow the appropriate legal standards to ensure the record was complete and instead relied on gaps in the record to make negative and unsupported inferences against Plaintiff. The Court disagrees.

During the initial application process, Plaintiff identified Dr. Karent from RGH and Dr. Kranes, located on Portland Avenue (where RGH is located), as treatment providers. T. 186, 200-01. At the hearing level, the ALJ explicitly asked Plaintiff to list all medical providers who had treated him during the relevant period which he identified as RGH and RMHC. T. 39-42. The ALJ made requests to both providers for *all* medical records prior to and during the relevant period on Plaintiff's behalf. *See* T. 233, 249. The records received from RGH and RMHC contain no reference to or treatment records from a Dr. Kranes or Dr. Karent. However, they do contain treatment notes from nurse practitioner ("NP") Angela F. Karnes, who treated Plaintiff for his hypertension. *See* T. 283-84. Given the similarity in the spelling of the three names, and the lack of any records from a Dr. Kranes or Dr. Karent in more than 300 pages of records provided by RGH, it was reasonable for the ALJ to conclude that NP Karnes, who treated Plaintiff at RGH on

11

Portland Avenue, was the treatment provider Plaintiff was referring to in his application and at the hearing. Accordingly, the Court finds no reason to expect the ALJ to further attempt to obtain medical records that in all likelihood, do not exist, especially given the incomplete and unreliable information Plaintiff supplied.

Plaintiff also contends that two minor references to Dr. Beatrice Deshommes in the record as Plaintiff's primary care physician should have prompted the ALJ to further develop the record. *See* T. 268, 627. However, Plaintiff did not name Dr. Deshommes as a treating source on his application, nor did he mention Dr. Deshommes as a treating source at the hearing. Furthermore, the record Plaintiff refers to gives Dr. Deshommes' contact information as 1425 Portland Ave., TWIG Medical Associates. T. 627. 1425 Portland Avenue is the address for RGH and TWIG Medical Associates falls under Rochester Regional Health, where the ALJ sent the request for "[a]ll medical records on Frederick Tyrone Edwards" for dates ranging from January 2000, through August 2016. T. 233, 249. Accordingly, it was reasonable for the ALJ to conclude that any and all treatment records from treating sources associated with Rochester Regional Health and RGH were contained in the record.

Further fulfilling her duty to develop the record, the ALJ shared all of the evidence received by the SSA with Plaintiff and advised him that she would assist him further with development of the record if he identified witnesses or documents, along with

their names and addresses. Plaintiff made no such requests. At the appeals level, Plaintiff requested the Appeals Council to hold the record open for Plaintiff's attorney to submit arguments and additional evidence, which the Appeals Council granted. However, Plaintiff did not submit additional evidence. *See* T. 4. If Plaintiff believed additional evidence was in fact available, it was his duty to provide it or at the very least, take advantage of the ALJ's offers to assist him in doing so. *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (ALJ adequately fulfilled his obligation to develop the record where the claimant's counsel volunteered to obtain records, the ALJ kept the record open to allow supplementation of the record, and counsel did not request the ALJ's assistance in securing the additional evidence.); *Voyton v. Berryhill*, No. 6:17-CV-06858-MAT, 2019 WL 1283819, at *3 (W.D.N.Y. Mar. 20, 2019) (ALJ was not faulted for the absence of treatment records where plaintiff failed to utilize numerous offers of assistance in obtaining records made by the SSA and the ALJ throughout the appeals process); *see also Ferland v. Commissioner of Social Security*, No. 17-10368, 2018 WL 4102852, at *10 (E.D. Mich. July 31, 2018) ("Although an ALJ has the affirmative duty to develop the factual record, the ALJ need not seek out a physician's medical opinion . . . where, as here, it appears none exists . . . And if additional medical evidence actually existed, presumably plaintiff's counsel would have located [it] before plaintiff filed

his motion for summary judgment . . .") (internal quotation marks and citations omitted).

Although Plaintiff alleged he received treatment for back pain, the records RGH provided to the SSA in response to the ALJ's request for "[a]ll medical records" for Plaintiff dating from January 2000, through July 2016, contain no treatment records for back pain or a back impairment, and no imaging or testing relating to a back impairment. *See* T. 249, 268-89, 338-643. Nor has Plaintiff provided any additional information suggesting he received treatment for his back pain elsewhere. Moreover, Plaintiff's treatment notes from RGH indicate physical examinations which consistently showed a normal range of motion and no tenderness to palpation. *See, e.g.,* T. 268, 273-74, 275, 277-78, 283-84.

The Court finds the ALJ adequately developed the record and permissibly determined that the evidence produced by Plaintiff's treatment providers, consultative examiners, and state medical reviewers was sufficient to determine whether or not Plaintiff was disabled. *See Perez*, 77 F.3d at 48; *Tatelman*, 296 F. Supp.3d at 612. Accordingly, the Court finds remand is not warranted on this basis.

## II.  The RFC Assessment Is Supported by Substantial Evidence

Plaintiff further contends that the RFC assessment is unsupported by substantial evidence because the ALJ improperly relied on the stale opinion of the non-examining state agency

review psychologist Dr. T. Harding over the opinion of the state agency psychiatric consultative examiner Dr. Yu-Ying Lin, and improperly rejected the opinion of state agency internal medicine consultative examiner Dr. Harbinder Toor. For the reasons discussed below, the Court finds Plaintiff's argument lacks merit.

### A.    The Opinion of Dr. Yu-Ying Lin

On October 16, 2014, Plaintiff underwent a psychiatric evaluation by consultative examiner, Dr. Lin. T. 291-94. Dr. Lin noted that Plaintiff reported two past psychiatric hospitalizations at RGH and past treatment at RHMC, from 2010 to 2011. Plaintiff reported he was not currently in treatment. T. 291. Plaintiff reported he had depressive symptoms for the past eight years, and he endorsed a dysphoric mood, fatigue, diminished sense of pleasure, social withdrawal, and loss of usual interests. He reported that he had excessive worry, difficulty concentrating, and hyperstartle responses. Plaintiff reported two episodes of hallucinations where he saw people who were not actually there in 2010 and 2011, but he denied current hallucinations. *Id*. He reported he often forgot conversations or where he put things, and that his major stressors were finances, his health condition, and martial problems. T. 292. Plaintiff denied alcohol abuse but reported heavy drinking from 2005 to 2007. He reported he currently drank once or twice a week, ranging from three to six beers at a time. Plaintiff reported marijuana use from 2008 to 2013 and denied attending any treatment programs. *Id*. Plaintiff took the bus to the

examination and reported that he could dress, bathe and groom himself. T. 291, 293. He reported that he manages his own money; knows how to cook, clean, do laundry and shop; but he currently does not shop or do laundry because of his medical condition. *Id.*

Upon examination, Plaintiff was well groomed and casually dressed. His eye contact was appropriate, and his demeanor was cooperative. Plaintiff's speech was slightly mumbled, but fluent. His expressive and receptive languages were adequate. Dr. Lin noted that Plaintiff displayed coherent and goal directed thought processes with no evidence of hallucinations, delusions, or paranoia. Plaintiff's attention and concentration appeared mildly impaired due to anxiety in the evaluation. T. 292. He performed his serial threes somewhat slowly. His recent and remote memory skills appeared moderately impaired due to anxiety in the evaluation. T. 293.

Dr. Lin diagnosed Plaintiff with major depressive disorder, moderate; unspecified anxiety disorder; alcohol use, partial remission; and cannabis use, full remission. T. 294. Dr. Lin opined that Plaintiff is able to follow and understand simple directions and instructions. He can perform simple tasks independently, learn new tasks, make appropriate decisions, and relate adequately with others. T. 293. Dr. Lin opined that Plaintiff is mildly limited in maintaining attention and concentration and maintaining a regular schedule. He is moderately limited in performing complex tasks independently, and he is moderately to markedly limited in

appropriately dealing with stress. Dr. Lin opined that Plaintiff's difficulties are caused by stress-related problems. *Id.* Finally, Dr. Lin opined that the results of the evaluation appeared to be consistent with psychiatric problems, but in itself, "this does not appear to be significant enough to interfere with [Plaintiff's] functioning on a daily basis." T. 293-94.

In her decision, the ALJ gave "partial" weight to Dr. Lin's opinion. T. 20. The ALJ noted that although Dr. Lin noted moderate limitations in memory and mild limitations in attention and concentration, Plaintiff was able to take public transportation to the evaluation and admitted he performs self-care independently and manages his own funds. T. 20 *referring to* T. 291-94. Further, the ALJ found that the overall evidence of record did not support Plaintiff's allegations of mental impairments.

**B.    The Opinion of Dr. T. Harding**

On October 22, 2014, state agency psychological consultant Dr. Harding provided a functional assessment based on the review of Plaintiff's available record, including Dr. Lin's evaluation and the initial set of records received from RGH and RMHC. T. 57-64. Dr. Harding opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. T. 57-59. Dr. Harding

opined that Plaintiff retained the capacity to perform unskilled to semi-skilled tasks. T. 59.

In her decision, the ALJ gave "great" weight to the portion of Dr. Harding's opinion regarding Plaintiff's moderate limitations. However, the ALJ gave "less" weight to that portion of Dr. Harding's opinion that Plaintiff could perform semi-skilled tasks because it was inconsistent with Dr. Harding's acknowledgment that Plaintiff demonstrated moderate memory impairment, below average intelligence, and lethargic motor behavior. T. 20.

### C. The ALJ's Evaluations of the Opinions of Dr. Lin and Dr. Harding Are Supported by Substantial Evidence

Plaintiff argues the ALJ improperly relied on the "stale" opinion of non-examining state agency psychologist Dr. Harding over the opinion of examining consultative psychologist Dr. Lin. For the reasons set for below, the Court finds Plaintiff's argument is without merit.

As a threshold matter, the Court notes that the mere passage of time does not necessarily render a medical opinion outdated or stale, but subsequent treatment notes indicating a claimant's condition has deteriorated may. *See, e.g., Jones v. Colvin*, No. 13-CV-06443, 2014 WL 256593, at *7 (W.D.N.Y. June 6, 2014) (ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"). Here, Plaintiff has given no indication as to why he classified Dr. Harding's opinion

as "stale." He has not argued an inordinate length of time passed between Dr. Harding's opinion and the ALJ's decision, nor has he provided evidence demonstrating his mental conditions have deteriorated in any way. Furthermore, Dr. Harding's opinion was rendered after Dr. Lin's, which Plaintiff did not suggest was "stale." Accordingly, the Court finds Dr. Harding's opinion is not "stale."

The Court further finds that the ALJ acted within her discretion when assigning "partial" weight to Dr. Lin's opinion and "great" weight to the portion of Dr. Harding's opinion that assessed moderate limitations in the ability to understand and maintain detailed instructions, carry out detailed instructions, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting, but "less" weight to Dr. Harding's opinion that Plaintiff was capable of semi-skilled work. T. 20.

When assessing a disability claim, an ALJ is required to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The ALJ's RFC finding need "not perfectly correspond with any of the opinions of medical sources." *Id.*; *see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999) ("the ALJ's RFC finding need not track any one medical opinion").

The ALJ found that while Dr. Lin's opinion was entitled to "partial" weight, her opinion was based in part on Plaintiff's

subjective statements while the overall evidence of the record did not support his allegations. T. 20. It was not erroneous for the ALJ to adopt various aspects of Dr. Lin's opinion while rejecting others, so long as she properly set forth her reasons for doing so. *See Walker v. Colvin*, 3:15-CV-465 (CFH), 2016 WL 4768806, at *10 (N.D.N.Y. Sept. 13, 2016) ("[A]n ALJ may properly credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.") (quotation omitted). Moreover, Dr. Lin opined that Plaintiff's problems did not appear to be significant enough to interfere with his functioning on a daily basis. T. 293-94.

To the extent Plaintiff argues it was improper for the ALJ to give greater weight to the opinion of Dr. Harding than the opinion of Dr. Lin, when Dr. Harding's opinion was primarily based on the opinion of Dr. Lin, the Court disagrees.

Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand. *See Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("the fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand"); *Savage v. Comm'r of Soc. Sec.*, No. 2:13-CV-85, 2014 WL 690250, at *7 (D. Vt. Feb. 24, 2014) (finding no harm to claimant

where ALJ adopted an RFC determination that was more restrictive than medical source's opinion).

Dr. Lin opined Plaintiff was capable of learning new tasks, making appropriate decisions and relating adequately with others (T. 293), whereas Dr. Harding opined Plaintiff had moderate limitations understanding, remembering, and carrying out detailed instructions, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting. T. 57-58. Furthermore, the ALJ rejected the portion of Dr. Harding's opinion that stated Plaintiff was capable of more than unskilled work. T. 20. Accordingly, the Court finds no error in the ALJ's decision to credit the more restrictive portion of Dr. Harding's opinion and incorporate those limitations into the RFC finding over the similar, but less-restrictive limitations noted in Dr. Lin's opinion.

For all the reasons set forth above, the Court finds the ALJ properly evaluated the opinions of Dr. Lin and Dr. Harding and accordingly, remand is not warranted on this basis.

**D.  The ALJ Properly Evaluated the Opinion of Dr. Toor**

Plaintiff also argues the ALJ improperly rejected the opinion of Dr. Toor. The Court finds this argument without merit, for the reasons discussed below.

On October 16, 2014, Plaintiff underwent an internal medicine examination by consultative examiner Dr. Toor. T. 296-99. Plaintiff reported a history of chronic pain in his lower back since 2006. He

reported he had injured his back and that his pain was constant, sharp, radiated to both legs, and was an eight out of ten on a scale from one to ten. T. 296. Plaintiff reported he had difficulty standing, walking, sitting, bending, and lifting. Dr. Toor noted Plaintiff also had keloids in multiple sites on his body, including his face, back, and extremities. Plaintiff reported he had hypertension since 2010 and depression for a few years. Plaintiff further reported he had been hospitalized at RGH in 2010 for back pain and depression. Plaintiff reported he cooked, cleaned and shopped once per week, and did no laundry. *Id.*

Upon examination, Plaintiff appeared to be in moderate pain, with a slightly abnormal gait. Plaintiff declined to squat or walk on his heels and toes. He had a normal stance and did not need an assistive device. However, he had difficulty getting on and off the exam table and getting out of his chair. T. 297. Dr. Toor reported that Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. He had no scoliosis, kyphosis, or abnormality in the thoracic spine. Plaintiff's lumbar flexion was ten degrees, extension was zero degrees, lateral flexion and lateral rotation bilaterally was twenty degrees. Plaintiff had positive straight leg raising tests in both the sitting and supine position, bilaterally. He exhibited a full range of motion of his shoulder, elbows, forearms, and wrists bilaterally. He had a full range of motion in his hips, knees, and ankles bilaterally. Plaintiff's joints were stable and

nontender. Dr. Toor noted there was no muscle atrophy evident. T. 298.

Dr. Toor diagnosed Plaintiff with history of injury/chronic lower back pain; history of keloids at multiple sites; history of depression; and history of hypertension. T. 298. Dr. Toor opined that Plaintiff has moderate to severe limitations standing, walking, bending, and lifting. Dr. Toor further opined that Plaintiff has moderate limitation sitting for a long time. Finally, Dr. Toor noted that Plaintiff's pain interferes with his physical being and sometimes with his balance. T. 299.

In her decision, the ALJ gave Dr. Toor's opinion "little" weight. The ALJ noted that there were no objective findings or corroborating examination notes in the record from any providers to support Dr. Toor's opinion. T. 20. Specifically, the ALJ noted that nowhere else in the medical record did Plaintiff walk with a limp or complain of back pain. The ALJ found that Dr. Toor's opinion was neither supported by nor consistent with the overall evidence of record and that the record provided insufficient evidence to find a medically determinable back impairment or assess any physical functional limitations. *Id*. The Court finds that the ALJ's weighing of Dr. Toor's opinion was supported by substantial evidence. An ALJ is permitted to discount portions of a consultative examiner's opinion where they are not supported by the medical evidence of record. *See Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015)

(summary order) (ALJ did not commit reversible error "by dismissing a portion of the opinion of [the] consultative examiner").

In addition, Dr. Toor's assessment of moderate to severe exertional limitations is inconsistent with substantial evidence in the record. Plaintiff testified at the hearing that he could lift 15 pounds, which is consistent with an ability to perform greater-than-sedentary work. T. 42-43. He also reported having performed various temporary "heavy" exertional level jobs, including roofing, during the alleged disability period. T. 37, 220, 223. Plaintiff's physicians routinely observed that he walked normally and had no significant musculoskeletal deficits. Plaintiff argues the lack of medical evidence supporting his allegations of back pain is due to the ALJ's failure to properly develop the record, but the Court has already addressed that contention above and found it has no merit. Because the Court finds no error in the ALJ's evaluation of Dr. Toor's opinion, remand is not warranted on this basis.

## III. The ALJ Properly Evaluated Plaintiff's Credibility

Finally, Plaintiff contends the ALJ failed to evaluate his subjective statements pursuant to the procedures and factors set forth in 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p (S.S.A.), 2017 WL 5180304 (Oct. 25, 2017). In particular, Plaintiff argues that (1) the ALJ impermissibly relied on an incomplete record to find his allegations were unsupported, and (2) the ALJ failed to identify any objective evidence that was inconsistent with

Plaintiff's allegations when determining his credibility. For the reasons set forth below, Plaintiff's argument lacks merit.

As a threshold matter, the Court has already found the ALJ fulfilled her duty to develop the record and Plaintiff has not supplied any additional evidence supporting the contention that the record is incomplete. Furthermore, SSR 16-3p (which Plaintiff cites in his argument) superseded SSR 96-7p (S.S.A.), 1996 WL 374186 (July 2, 1996) in 2017, eliminating the use of the term "credibility" from the sub-regulatory policy. However, SSR 96-7p was in effect at the time the ALJ wrote her decision in 2015, thus making its application in this case appropriate. Accordingly, the Court will interpret Plaintiff's argument to mean the ALJ failed to evaluate Plaintiff's subjective statements pursuant to SSR 96-7p rather than SSR 16-3p.

For the purposes of judging credibility, "a longitudinal medical record demonstrating [a claimant's] attempts to seek medical treatment . . . and to follow that treatment once it is prescribed lends support to [a claimant's] allegations of intense and persistent pain or other symptoms. . . ." SSR 96-7p. 1996 WL 374186, at *7. Conversely, a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as proscribed." *Id. See also Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018) ("Where, as here, a claimant has sought

little-to-no treatment for an allegedly disabling condition, his inaction may appropriately be construed as evidence that the condition did not pose serious limitations.") (citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989)). Additionally, an ALJ's credibility assessment is entitled to deference. "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, No. 12-CV-6308 (MAT), 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted).

In her decision, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. T. 19. In particular, the ALJ noted Plaintiff's inability to remember the names of his doctors or names of the facilities where he received treatment, the lack of evidence of any current mental health treatment, and the lack of evidence that Plaintiff sought treatment for any back impairment. *Id*. These reasons all provide substantial evidence supporting the ALJ's credibility finding. *See Hargrave*, 2014 WL 3572427, at *5.

Plaintiff argues that the lack of evidence showing treatment is due to the ALJ's failure to properly develop the record. However, as the Court has already established, the ALJ properly

developed the record, and there is no reliable evidence supporting Plaintiff's suggestion that there is additional evidence to obtain, nor has Plaintiff presented any such evidence to the Appeals Council or to this Court. Plaintiff points to an August 15, 2016 reference in the RGH records indicating he had been prescribed Flexeril for muscle spasms as evidence that the medical record is incomplete. But the Court finds this unpersuasive. Plaintiff presented to the emergency department on August 15, 2016, for an allergic reaction and swollen lip. T. 620-26. While there, he made no mention of any back issues and an examination showed he exhibited a normal range of motion. T. 623-24. Flexeril was noted on his list of current medications, which also included several medications treating Plaintiff's hypertension. *See* T. 626, 636. In her decision, the ALJ acknowledged the record contained inferences to Plaintiff's alleged back impairments, but ultimately found that the inconsistency in Plaintiff's statements with the overall evidence of record did not support the degree of restriction Plaintiff alleged. T. 19. This judgment was within the ALJ's discretion and aligns with the Commissioner's regulations. *See* SSR 96-7p.

For the reasons set forth above, the Court finds no error in the ALJ's finding that Plaintiff was less than fully credible. The Court accordingly finds that remand is not warranted on this basis.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 13) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     April 17, 2019
           Rochester, New York